IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:21-CR-216-RP |
| MICHAEL FULLERTON (1) | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Michael Fullerton's ("Defendant") Motion to Dismiss Counts 10 and 11 of the Indictment, (Dkt. 166), and the United States of America's ("the Government") response, (Dkt. 171). Having reviewed the briefing, the record, and the relevant law, the Court will deny Defendant's motion.

**I. BACKGROUND**

The Government alleges that Defendant engaged in a fraudulent scheme with other conspirators to apply for and receive Payroll Protection Program (PPP) loans during the COVID-19 pandemic. (Indictment, Dkt. 11). Defendant was first indicted by a federal grand jury on November 16, 2021, and charged with conspiracy to commit wire and bank fraud, bank fraud, wire fraud, conspiracy to commit money laundering, engaging in monetary transactions in criminally derived property, and aggravated identity theft. (*Id.*). A Third Superseding Indictment was then issued on July 18, 2023, which added a second aggravated identity theft count against Defendant. (Dkt. 152).

Under the Third Superseding Indictment, Defendant is charged with two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and these allegations comprise Counts 10 and 11. (*Id.*). PPP loans were designed to provide relief to small businesses during the COVID-19 pandemic by allowing businesses to continue to pay their workers. (Third Indictment, Dkt. 152, at

2). To apply for a PPP loan, small business applicants had to state, among other things, their average monthly payroll expenses and the number of their employees. (*Id.*). Applicants were also required to provide supporting documentation showing their payroll expenses. (*Id.*). The Government alleges that Defendant submitted fraudulent applications in the name of defunct businesses which were not in operation at the time that the applications were submitted. (Resp., Dkt. 171, at 2). To do so, Defendant allegedly used fraudulent documents to support the loan applications, including fraudulent lists of employees and fraudulent tax documents. (*Id.* at 2–3).

With regard to Count 10, the Government alleges that Defendant created fake tax records to attach to the fraudulent loan applications he submitted. (*Id.* at 3–4). As one example, in the PPP loan application from Fullerton Consulting Group, LLC in April 2020 to Celtic Bank, Defendant allegedly attached a fake Form 940, "Employer's Annual Federal Unemployment (FUTA) Tax Return," and several fake Forms 941, "Employer's Quarterly Federal Tax Return," to the application. (*Id.* at 4). On those forms, Defendant allegedly used the name and forged signature of a certified public accountant, S.S., to indicate that the form had been completed by a tax preparer, when in fact, S.S. did not prepare any of the forms for the PPP application. (*Id.*).

With regard to Count 11, the Government alleges that Defendant used the names and Social Security numbers of six real people, EMPLOYEES 1–6, to support the fraudulent loan applications. Under the PPP loan program, the loan amount that a business was eligible for was dependent upon a business's payroll expenses and the number of employees it employed. (Third Indictment, Dkt. 152, at 2). The Government alleges that Defendant used the names and Social Security numbers of EMPLOYEES 1–6, in all five of the fraudulent PPP loan applications. (Resp., Dkt. 171, at 3). It also alleges that he included fraudulent W-2 Wage & Tax Statements for each of the claimed employees. (*Id.*).

Defendant moves to dismiss Counts 10 and 11 of the Indictment arguing that they fail to charge an offense. (Mot., Dkt. 166). Defendant's motion hinges on *Dubin v. United States*, 143 S. Ct. 1557 (2023), a recently decided Supreme Court decision from June 2023, which narrowed the applicability of 18 U.S.C. § 1028A. Defendant argues that *Dubin* held that a charge of identity theft does not lie unless "the identity theft is the crux of the offense and not merely an ancillary feature of an allegedly fraudulent scheme." (Mot., Dkt. 166, at 1). Therefore, according to Defendant, Counts 10 and 11 fail to state a claim of aggravated identity theft because neither of the allegations in those counts—the use of the accountant's name and signature and the use of the employees' names and Social Security numbers—were the "crux" of the overall alleged scheme. (*Id.* at 2).

The Government responds that Counts 10 and 11 properly constitute charges of aggravated identity theft under *Dubin*. The Government contests Defendant's understanding of *Dubin*, arguing that all that *Dubin* requires is that there be a "'genuine nexus' between the use of the means of identification alleged in Counts 10 and 11 and the predicate offense." (Resp., Dkt. 171, at 1) (quoting *Dubin*, 143 S. Ct. at 1565).

## II. LEGAL STANDARD

A criminal indictment is a "plain, concise and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). These include motions that allege "a defect in the indictment," including "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v).

"In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Suarez*, 966 F.3d 376, 382 (5th Cir. 2020) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). In general, an indictment is sufficient to survive a motion to

3

dismiss "if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and insures that there is no risk of future prosecutions for the same offense." *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir. 1994) (citing *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991)). A court may rule on a pretrial motion to dismiss an indictment when the alleged infirmity "is essentially one of law." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). "A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023).

### III. DISCUSSION

Defendant challenges two counts of the Indictment on the basis that Count 10 and 11 fail to charge the offense of aggravated identity theft under 18 U.S.C. § 1028A.[1] His motion is procedurally proper because it alleges an infirmity that is based on law, *see Fontenot*, 665 F.3d at 644—namely, that the allegations in Counts 10 and 11 cannot constitute aggravated identity theft under § 1028A after the Supreme Court's decision in *Dubin*. However, the Court disagrees with Defendant's construction of *Dubin* and instead finds the Government and the Eleventh Circuit's analysis in *United States v. Gladden*, 2023 WL 5281836, (11th Cir. Aug 17, 2023), to be persuasive. Accordingly, the Court finds that Counts 10 and 11 properly state offenses under the *Dubin* framework of § 1028A.

Section 1028A makes it a crime for a person to "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person" "during and in relation to" a predicate offense. The provision applies in regard to numerous predicate offense, including bank

---

[1] Defendant cites Federal Rule of Criminal Procedure 12(b)(2) for the basis of his Motion. (Mot., Dkt. 166, at 1), which allows a party to raise a motion that the "court lacks jurisdiction." Because Rule 12(b)(2) is inapplicable in this instance, the Court will construe Defendant's Motion as one pursuant to Rule 12(b)(3)(B)(v), which allows a motion for "failure to state an offense."

fraud and wire fraud. § 1028A(c). In *Dubin v. United States*, the Supreme Court narrowed the applicability of § 1028A after noting how "boundless" some interpretations of the statute had become. 143 S. Ct. at 1563. The Court's aim was to correct an understanding of § 1028A such that it would no longer "apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses." *Id.* at 1564–65. Instead, it held that:

> A defendant "uses" another person's means of identification "in relation to" a predicate offense when this use is at the crux of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more than a causal relationship, such as facilitation of the offense or being a but-for cause of its success. Instead, with fraud or deceit crimes . . ., the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.

*Id.* at 1573 (internal citation omitted).

The Eleventh Circuit, the only circuit court to have thus far interpreted *Dubin*, explained the Court's decision as having limited § 1028A's reach to situations where "'a genuine nexus' exists between the use of a means of identification and the predicate offense." *Gladden*, 2023 WL 5281836, at *7 (quoting *Dubin*, 143 S. Ct. at 1565). The Eleventh Circuit held that under *Dubin*, § 1028A "still proscribes 'use[s] [of a means of identification] involving fraud or deceit about identity[.]' *Dubin* thus redirects the statute's focus to 'offenses built around what the defendant does with the means of identification in particular. In other words, the means of identification specifically [must be] a key mover in the criminality.'" *Id.* (quoting *Dubin*, 143 S. Ct. at 1568–70) (alterations in original)

To explain the sort of offenses that would still fall under § 1028A after *Dubin* and which offenses would not, the Supreme Court used this heuristic: § 1028A covers activities that "misrepresent[] *who* received a certain service," but it does not cover "fraudulent claims regarding *how* or *when* a service was performed." *Dubin*, 143 S. Ct. at 1565 (emphasis in original). For

example, in *Dubin*, the defendant committed healthcare fraud by submitting a false reimbursement claim to Medicaid for psychological testing that inflated the reimbursement rate by overstating the qualifications of the service provider and changing the date of the examination. *Id.* at 1563. The Court held that Dubin's actions could not be a basis for conviction under § 1208A because the use of the patient's name was not at the crux of what made the underlying scheme fraudulent; it was instead an "ancillary feature" of the fraudulent billing scheme. *Id.* at 1574–55. In other words, "[Dubin's] fraud was in misrepresenting how and when services were provided to a patient, not who received the services." *Id.* at 1575.

The Eleventh Circuit's holding in *Gladden* also illustrates this dichotomy. In *Gladden*, the court upheld one defendant's conviction under § 1028A but reversed a second defendant's conviction because it no longer fit within the meaning of the statute after *Dubin*. *Gladden*, 2023 WL 5281836, at *7–11. The fraudulent scheme at issue in the case was a plot by pharmacy employees to defraud pharmacy networks by billing for medically unnecessary and fraudulent prescriptions. *Id.* at *1. The court upheld an aggravated identity theft conviction for the defendant, Linton, who used the identities of patients to submit and bill for prescriptions that those patients were not aware of nor received. *Id.* at *7. The court reasoned that Linton's forgery of the patients' identities was "at the heart of the deception" and because the "deception centered on the identity of the individual receiving the product," she had committed identity theft. *Id.* at *8. In contrast, the Eleventh Circuit reversed the conviction for a second defendant, Gladden, whose misrepresentations involved only whether the prescriptions were medically necessary. *Id.* at *11. The court found that Gladden's use of patients' identifying information was "merely ancillary to the deception" because at no point did Gladden misrepresent *who* received the prescriptions; instead, the fraudulent actions centered on *how* the prescription billing was fraudulent. *Id.*

6

Here, Defendant bases his challenge to Counts 10 and 11 of the Indictment on an argument that *Dubin* requires that identity theft be "the crux of the offense and not merely an ancillary feature of an allegedly fraudulent scheme." (Mot., Dkt. 166, at 1). However, as explained above and as the Government responds, that is not quite what the *Dubin* Court held. Instead, the main issue is whether Defendant's use of another person's means of identification is "the crux of what makes the conduct criminal," meaning that the means of identification were "used in a manner that is fraudulent or deceptive" that gets to "who" is involved. *Dubin*, 143 S. Ct. at 1573. Under that proper construction of the statute, it is clear that Defendant's alleged uses of others' means of identification as described in Counts 10 and 11 properly constitute aggravated identity theft charges under *Dubin*.

To start with Count 10, the Government alleges that Defendant used the name and signature of a certified public accountant, S.S., on fake tax records to lend credibility to fraudulent loan applications. (Third Indictment, Dkt. 152, at 11; Resp., Dkt. 171, at 3–4). Defendant contends that this count fails under *Dubin* because the use of S.S.'s identity was limited to this alleged purpose and this purpose was not the "crux" of the overall alleged fraudulent scheme. (Mot., Dkt. 166, at 2). However, it is hard to identify a clearer allegation of identity theft. Under these facts, Defendant stole an accountant's identity and forged his signature for the purpose of signifying that the tax records were properly prepared. This action directly legitimized the loan applications and increased the likelihood that they would be approved by the appropriate financial institutions. Defendant's alleged action is thus unlike Dubin's ancillary use of a patient's name in his fraudulent misrepresentation about the qualifications of a medical provider. Instead, it mirrors the actions of defendant Linton from *Gladden*: Like Linton, Defendant misrepresented who performed the service of preparing the tax form. His fraud thus centered on "who" was involved in the fraudulent action. Because his use of S.S.'s identity was "used in a manner that is fraudulent or deceptive," *Dubin*, 143

S. Ct. at 1573, Count 10 properly states facts that would constitute a charge of aggravated identity theft under § 1028A.

Count 11 fares no differently. Under this count, the Government alleges that Defendant used the names and Social Security numbers of six employees of another business on loan applications and fake W-2 forms in order to claim them as employees of his business. (Third Indictment, Dkt. 152, at 11–12; Resp., Dkt. 171, at 3). Defendant similarly argues that Count 11 fails because the "only purpose" of this information was "to complete fully the PPP applications and maximize the amount loaned," which "was not the crux of the alleged scheme." (Mot., Dkt. 166, at 2). However, Defendant fails to recognize that this purpose is sufficient to charge an offense of aggravated identity theft under *Dubin*. His alleged use of the six employees' information was "used in a manner that is fraudulent or deceptive," *Dubin*, 143 S. Ct. at 1573, because the employees did not work at his business nor did their information actually appear on W-2 forms in connection to his business. Instead, the use of the information was crucial to being able to fill out the fraudulent loan applications because the amount of the PPP loans so heavily depended on the number of employees that a business had. If Defendant did not include the employees' information, he would have been unable to secure the loans. Further, this use of their information falls under *Dubin* because PPP loans were, among other things, supposed to be used to pay the salaries of an applicant business's employees. By allegedly asserting that EMPLOYEES 1–6 worked at his business, Defendant's misrepresented who was to be receiving the PPP funds. In this way, Defendant's actions are again comparable to defendant Linton in *Gladden* because his fraud misrepresented "who" would be receiving the service at issue. Therefore, Defendant's alleged use of the employees' information under Count 11 of the Indictment also properly constitutes a charge of aggravated identity theft under § 1028A.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss Counts 10 and 11 of the Indictment, (Dkt. 166), is **DENIED**.

**SIGNED** on September 20, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE